IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 09-CV-02737-LTB

PAMELA S. MILLS,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

**ORDER**

THIS MATTER is before me on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits under the Social Security Act. Plaintiff, Pamela S. Mills, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying her application for Social Security Disability benefits. Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I afffirm.

    I.    <u>STATEMENT OF THE CASE</u>

Mills first applied for SSI benefits on February 3, 2003. After her claim was denied on August 26, 2003, she requested a hearing which was held on April 29, 2005, before an Administrative Law Judge (ALJ). On June 7, 2005, the ALJ found that Mills was not disabled. She then requested review of the ALJ's decision by the Appeals Council, which reversed and remanded it for a new hearing. The ALJ held a second

hearing on January 8, 2007, and issued another unfavorable decision on February 28, 2007. After the Appeals Council denied Mills' request for review, she initiated her first appeal to this Court on September 21, 2007. This Court granted Defendant's Unopposed Motion to Remand, based on the expressed intent of the Appeals Council to obtain supplemental vocational expert evidence. The ALJ held a third hearing on January 9, 2009, and issued a decision denying Plaintiff's claim on April 2, 2009. The Appeals Council denied Plaintiff's request for review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

    II.    <u>STATEMENT OF FACTS</u>

    A.    Background

Plaintiff was born on May 11, 1955, and was fifty-three years old at the time of the Commissioner's third decision. Administrative Record ("AR") 16. She has a high school education and past relevant work experience as an administrative clerk and receptionist. AR 16. She alleged that she became disabled because of "sclerosing cholangitis, primary bilary cirrhosis, chronic pain, and high blood pressure." AR 87.

    B.    Law

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. See 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her medical impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a prima facie case of disability based on these four steps as discussed, the analysis proceeds to Step Five where the Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

  C. ALJ's Ruling

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since January 1, 2003. AR 671. The ALJ next determined that Plaintiff had the following "severe" impairments: chronic abdominal pain, hypertension, degenerative joint disease in the right knee, and depression with insomnia. AR 671-72. The ALJ found that

Plaintiff does not have an impairment or combinations of impairments that meets or medically equals one of the listing impairments. AR 673-74. The ALJ went on to find that Plaintiff had the RFC to perform a limited range of light work as follows: lift and carry 20 pounds occasionally and 10 pounds frequently; sit one hour at a time for a total of six hours in an eight-hour day; stand 30 minutes at a time for a total of two hours during an eight-hour day; walk 30 minutes at a time for a total of two hours during an eight-hour day; occasionally stoop, knee, crouch, tolerate exposure to humidity, dust, fumes, odors, pulmonary irritants, extreme heat, and vibrations; never climb, balance, crawl, work at heights, be exposed to extreme cold, or operate a motor vehicle, and be able to understand, remember, and carry-out simple instructions. AR 673-74. Further, the ALJ found that Plaintiff's RFC precluded her from performing any of her past relevant work, which was semi-skilled or skilled, but Plaintiff could perform other work existing in significant numbers in the national economy.

### III. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart*, 350 F.3d 1097, 1098, 60 Fed. Appx. 729 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be appropriate

when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

IV. <u>ISSUES ON APPEAL</u>

A. Whether the decision of the ALJ is supported by substantial evidence and was determined by applying correct legal standards

1. Whether the ALJ erred in using only parts of the consultative examinations favoring his position

Plaintiff argues that although a number of medical records from her treating health care providers state that she is disabled, the ALJ rejected all of them except to the extent they agreed with his own RFC determination. Further, Plaintiff notes that the ALJ gave no weight to Dr. Grushan's conclusions that Plaintiff was disabled because Dr. Grushan was not a mental health specialist and did not follow the "strict guidelines" of the Social Security Administration. Plaintiff argues although the ALJ states that he gave Dr. Cucich's opinion "great weight," he failed to consider Dr. Cucich's opinion that she had severe impairments from her "moderate to severe major depressive disorder" and chronic pain from "multiple surgical interventions on her abdomen a number of times, suffering complications. So Plaintiff asserts that the ALJ's determination that Mils was not disabled is not supported by substantial evidence in the record. Further, Plaintiff goes on to state that the ALJ gave greater weight to the reports of Dr. Mars than those of her primary treatment provider, Mark Schwartz, and emphasized the positive aspects of Dr. Mars' findings while ignoring that Dr. Mars had noted Plaintiff's right knee had shown "severe articular cartilage abnormality" and "severe degenerative changes of the patellar articular cartilage", which was reduced to "crepitus and joint line tenderness

5

[of the right] knee in his last consultative examination.

Plaintiff argues that by giving Dr. Mars' 2006 consultative examination greater weight than the ALJ granted to Plaintiff's primary treatment providers and then ignoring Dr. Mars' opinion that she was "probably employable in a sedentary capacity" due to her "age, deconditioning, chronic pain and right knee pain," the ALJ erred.

In response, Defendant notes that the ALJ explained that he gave great weight to Dr. Mars' evaluation of Plaintiff's physical functional capacity after he examined Plaintiff in 2006 because Dr. Mars' opinion was consistent with other evidence, including his own physical examination findings. Defendant goes on to state that the ALJ also considered that Dr. Mars' subsequent opinions, after additional examinations, showed that Plaintiff had fewer limitations in most areas of function, but the ALJ relied on the limitations initially assessed in 2006 by Dr. Mars, which were supported by the record as a whole. Defendant argues that any error in failing to articulate additional reasons for discounting all of Dr. Mars' 2009 opinion would be harmless. Defendant asserts that the ALJ considered Dr. Mars' opinions in light of the entire record, which included evidence of Plaintiff's right knee degenerative joint disease and Dr. Mars' statement that Plaintiff was "probably employable in a sedentary capacity" and " should be restricted due to her age deconditioning, chronic pain and right knee pain."

Defendant also contends that the ALJ gave weight to Dr. Grushan's opinion that Plaintiff could not perform secretarial work because she could not perform frequent transfers from sitting to standing. Defendant notes that the ALJ found this limitation supported by the record and the limitation was consistent with the ALJ's assessment of Plaintiff's RFC. Defendant goes on to state that the ALJ considered that Mr. Schwartz's

6

2007 evaluation of Plaintiff's physical abilities was almost identical to Dr. Mars' opinion except that: 1) Mr. Schwartz stated without supporting evidence that loud noises exasperated Plaintiff's pain; and 2) Mr. Schwartz opined that Plaintiff was limited to occasional operation of foot controls based solely on her history of a completely healed right ankle fracture and her right knee degenerative joints disease.  Defendant argues that the ALJ properly gave significant weight only to the portions of Mr. Schwartz's opinion that were supported by the medical evidence and Dr. Mars' 2006 assessment.

As to Plaintiff's mental health, Plaintiff argues that the ALJ took pains to disparage and minimize Dr. Cucich's response to AXIS V of his diagnostic impression, a score of 50, which is the short-hand score to the Global Assessment of Functioning.  A GAF score between 41 and 50 indicates "**serious symptoms** (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational or school functioning** (e.g. no friends, unable to keep a job)(emphasis in original)." *Brant v. Barnhart*, 506 F.Supp.2d 476, 483 (D.Kan. 2007).  Such a GAF score should not be ignored.  *See id.*  In this case, the ALJ noted that "[a] GAF is highly subjective and does not equate to specific functional limitations ... Dr. Cucich did not rely on [Mills'] GAF score to delineate an impairment in either social, occupation or school functioning..." (AR. 679).

Defendant notes that the ALJ accepted Dr. Cucich's conclusion that Plaintiff had moderate limitations in her ability to understand, remember and carry out complex instructions and to make judgments of complex work-related decisions, but that she had only mild or no limitation in all other rated areas.  Defendant asserts that the ALJ, like

Dr. Cucich, considered that Plaintiff was assessed a GAF score of 50. Defendant goes on to state that the ALJ correctly noted that GAF scores are highly subjective and do not equate to specific functional limitations.

I reject Plaintiff's argument that the ALJ erred in using only parts of the consultative examinations favoring his position. My review of the record reveals that the ALJ adequately assessed Plaintiff's functional limitations, and then satisfactorily addressed those limitations in his RFC. Where, as here, the ALJ stated that he considered a matter, I have no reason to not take him at his word. *See Flaherty v. Astrue*, 515 F.3d F.3d 1067, 1071 (10th Cir. 2007). The ALJ did not err.

        2.       Whether the ALJ erred in failing to consider Mill's allegations of disabling pain in determining her RFC

Plaintiff notes that the ALJ made no reference to Mills' chronic pain as being a limitation on the abilities and activities of which he found her to be capable in his RFC. Plaintiff asserts that the ALJ's determination that her allegations of disabling pain were of limited credibility is not supported by the few examples stated in his decision or by the consultive examiners' reports.

Defendant argues that the ALJ is not required to accept Plaintiff's objective allegations without question. Defendant asserts Plaintiff's allegations of disabling pain are generally inconsistent with other evidence of record. Defendant states that the ALJ noted that Plaintiff gave conflicting reports of her narcotics use to examining physicians; that her veracity was questioned; and that medical providers expressed their suspicion that she was malingering for secondary gain during medical treatment. Defendant goes on to say that the ALJ considered that Plaintiff was looking for work after she alleged an

inability to do so and that Plaintiff's level of activities were inconsistent with her claims of disabling limitations.

"In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374186, at *1.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  *Id.* at *4.

The ALJ must consider all of the available evidence, including the claimant's subjective complaints.  *See id.* at *2–3.  He should give "careful consideration" to the "location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication; treatment, other than medication, for pain relief; and the claimant's daily activities."  *Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)) (internal formatting omitted).  The ALJ should consider the degree to which the claimant's statements are consistent with the medical signs, laboratory findings, and medical history, and the degree to which the claimant's statements made in connection with her disability claim are consistent with the statements made to medical providers.  *See* SSR 96-7p, 1996 WL 374186, at *5–6.

The ALJ should also take into consideration whether manifestations of the

9

complained-of symptoms have been observed by the claimant's physicians or others. *See id.* In so doing, the ALJ must consider the claimant's entire medical treatment history:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id.* at *7. On the other hand:

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The ALJ should consider whether the claimant was able to afford the recommended treatment, and whether the claimant had "been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." *Id.* at *8.

When the ALJ makes a credibility determination—as the ALJ did here—such a determination will not be overturned on review so long as it is based on substantial evidence and correct legal standards. *See Diaz v. Sec'y of Health & Human Servs.*,

10

898 F.2d 774, 777 (10th Cir. 1990).  I initially note that Social Security rules explicitly state: "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374186, at *1.  Moreover, Plaintiff's testimony concerning her limited daily activities is consistent with the opinions of her treating physicians over a period of several years.

The ALJ specified what informed his credibility determination.  As SSR 96-7p makes clear, "the adjudicator must consider the entire case record" when making a credibility determination and must consider the degree to which the claimant's statements made in connection with her disability claim are consistent with the statements made to medical providers.  See SSR 96-7p, 1996 WL 374186, at *1, 5–6 (emphasis added). Although somewhat close, I cannot conclude that the ALJ failed to meet this standard.  Here, the ALJ's findings are based on substantial evidence and inferences reasonable drawn from it.  Nor did he apply an incorrect legal standard.

It is therefore ORDERED that the Commissioner's decision is affirmed.

Dated: January __3__, 2011.
                                        BY THE COURT:

                                           s/Lewis T. Babcock
                                        Lewis T. Babcock, Judge

11